# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

ZENDY ARLENY TORRES GARCIA,

Petitioner,

v.

TEOFILO ISRAEL GUZMAN GALICIA,

Respondent.

Case No. 2:19-cv-00799-JAD-BNW

**REPORT AND RECOMMENDATION**

This case arises out of a dispute between the parents of a minor child, L.M.G.T., whom the child's mother, petitioner Zendy Arleny Torres Garcia, alleges was wrongfully taken from the State of Michoacán, Mexico, to the United States by the child's father, respondent Teofilo Israel Guzman Galicia. Torres Garcia petitions for the child to be returned to her in Mexico under the Hague Convention and the International Child Abduction Remedies Act. This matter was referred to the undersigned magistrate judge for a report of findings and recommendations on Torres Garcia's ex parte emergency motion for immediate return of the minor child (ECF No. 9).

**I.    Findings of fact**

Torres Garcia and Guzman Galicia were cohabitating in Morelia, which is in State of Michoacán, Mexico, when L.M.G.T. was born on July 4, 2006. (Torres Garcia Decl. (ECF No. 13) at ¶¶ 2-4.) Torres Garcia and Guzman Galicia are listed as L.M.G.T.'s parents on her birth certificate.[1] (Compl. (ECF No. 1) at Ex. 2.) Torres Garcia and Guzman Galicia lived together until May 2015 and that at some unspecified point after that, Guzman Galicia removed L.M.G.T.

---

[1] Furthering the goal of expedited proceedings in Hague cases, ICARA does not require authentication of documents supporting the petition for return for the documents to be admissible in court. 22 U.S.C. § 9005. The court therefore will consider the birth certificate attached to the complaint although it is not authenticated under the Federal Rules of Evidence.

from Mexico to the United States without Torres Garcia's knowledge, consent, or acquiescence. (Torres Garcia Decl. (ECF No. 13) at ¶¶ 4, 6-7.)

According to Torres Garcia, Guzman Galicia is "armed and dangerous" and his violent tendencies and substance abuse caused the parties' separation. (*Id.* at ¶ 20.) Torres Garcia states that she used to rely on Guzman Galicia for financial support, but that she was left without income when they separated. (*Id.* at ¶¶ 13-14.) Torres Garcia explains that the fact she had to "re-enter the work force and fend for [herself]" following the parties' separation is what allowed Guzman Galicia to keep L.M.G.T. and leave Mexico without Torres Garcia's knowledge. (*Id.* at ¶¶ 14-15.)

In January 2017, Torres Garcia filed a custody motion and criminal offense report in Michoacán against Guzman Galicia for abducting L.M.G.T. (*Id.* at ¶ 20.) She filed a Hague Convention request for the return of the child with the Mexican authorities in February 2018. (*Id.* at ¶ 21; Compl. (ECF No. 1) at Ex. 4.) Torres Garcia states she did not know L.M.G.T.'s location until late 2018, when Guzman Galicia contacted Torres Garcia and informed her that he and L.M.G.T. were living in Las Vegas, Nevada. (Torres Garcia Decl. (ECF No. 13) at ¶¶ 12, 16.) According to Torres Garcia, Guzman Galicia pressured her to sign over her custody rights to him and threatened she would never see L.M.G.T. again. (*Id.* at ¶ 16.) Torres Garcia attempted to communicate with Guzman Galicia and his extended family to secure L.M.G.T.'s return to Mexico to no avail. (*Id.* at ¶ 18.) She also attempted to obtain a visa to travel to Las Vegas to get the child herself, but her initial visa application was denied. (*Id.* at ¶ 17.)

Torres Garcia now seeks the return of L.M.G.T. to Mexico for a custody determination by the Mexican courts, arguing Guzman Galicia wrongfully removed and retained L.M.G.T. from Mexico, her habitual residence, in violation of Torres Garcia's custody rights. Torres Garcia argues she never acquiesced or consented to L.M.G.T.'s removal from Mexico and she was

exercising her parental rights at the time L.M.G.T. was removed from Mexico. Torres Garcia also seeks attorney's fees and costs under 22 U.S.C. § 9007.[2]

L.M.G.T. was 12 years old at the time the case was filed, but she has since turned age 13. (*See* Compl. at Ex. 2.) She attends J.D. Smith Middle School in North Las Vegas. (Torres Garcia Decl. (ECF No. 13) at ¶ 8.) She lives with Guzman Galicia and his family. (*Id.* at ¶ 12.) According to Torres Garcia's attorney, Guzman Galicia provided Torres Garcia with the following address: 5921 West Bartlett Avenue, Las Vegas, Nevada 89108. (Resch Aff. (ECF No. 20) at ¶ 4.)

Guzman Galicia was served with the complaint and petition for return of the child and the summons. (Decl. of Service (ECF No. 8) (indicating the complaint and summons were delivered to Pedro Franco, roommate/co-resident at 5921 W. Bartlett Avenue, Las Vegas, Nevada, 89108).) Torres Garcia moved for an ex parte temporary restraining order and for a warrant in lieu of a writ of habeas corpus directing law enforcement to bring Guzman Galicia and L.M.G.T. before the court. (ECF Nos. 9, 10.) The court restrained Guzman Galicia from removing L.M.G.T from the State of Nevada pending further court order but denied the request for a warrant in lieu of a writ of habeas corpus. (TRO (ECF No. 12).) The court further ordered Guzman Galicia to show cause in writing why the temporary restraining order should not be converted to a preliminary injunction and to appear at a preliminary injunction hearing on August 8, 2019. (*Id.* at 5.)

Torres Garcia served her emergency motion for injunctive relief (ECF Nos. 9, 10), her supporting declaration (ECF No. 13), and the court's temporary restraining order (ECF No. 12) on Guzman Galicia by United States mail on August 2, 2019. (Certificate of Service (ECF No. 14); Resch Aff. (ECF No. 20) at ¶¶ 12-13.) On August 7, 2019, Guzman Galicia contacted Torres Garcia's attorney's office and requested to move the hearing on the preliminary injunction because he had to work at the "solar farm," but the attorney's receptionist instructed Guzman Galicia to contact the court regarding any scheduling conflict he may have with the hearing.

---

[2] Petitioner cites 42 U.S.C. § 11607 in support of her request for attorney's fees, but this statute was transferred to 22 U.S.C. § 9007.

(Resch Aff. (ECF No. 2) at ¶¶ 14-15.)  Guzman Galicia did not file a written response to the court's show-cause order or appear at the preliminary-injunction hearing on August 8, 2019.  (*See* Mins. of Proceedings (ECF No. 16).)  At the hearing, the court converted the temporary restraining order to a preliminary injunction prohibiting Guzman Galicia from removing L.M.G.T. from the State of Nevada pending trial in this case.  (*Id.*)

After the preliminary-injunction hearing, Torres Garcia attempted to serve the court's temporary restraining order (ECF No. 12), the minutes of the preliminary-injunction hearing (ECF No. 16), and the court's subsequent order setting a case-management conference for August 14, 2019 (ECF No. 15) on Guzman Galicia on August 9, 2019, at the Bartlett address, but nobody answered the door.  (Resch Aff. (ECF No. 20) at ¶ 21.)  At the time of the second service attempt on August 10, 2019, Guzman Galicia's sister told the process server that Guzman Galicia moved to North Las Vegas.  (*Id*. at ¶ 22.)  The process server gave the sister her business card and requested that Guzman Galicia contact her to accept service of the documents.  (*Id.* at ¶ 23.)  The process server informed Torres Garcia's attorney that on August 12, 2019, Guzman Galicia called the process server and indicated he was "on his way back from Boulder City" and would pick up the documents at the process server's office on August 13, 2019.  (*Id.* at ¶ 24.)  As of 3:00 p.m. on August 13, 2019, Guzman Galicia had not picked up the documents, so the process server left them with Guzman Galicia's sister at his last-known address on Bartlett Avenue that afternoon. (*Id*. at ¶¶ 26-28; Decl. of Service (ECF No. 17) (indicating the documents were delivered to Guzman Galicia's sister, Mireya Guzman, at 5921 W. Bartlett Avenue, Las Vegas, Nevada 89108).)  Guzman Galicia did not appear at the case-management conference on August 14, 2019. (Mins. of Proceedings (ECF No. 21).)

At the case-management conference, Torres Garcia testified under oath that her aunt informed her that Guzman Galicia and L.M.G.T. have left Las Vegas and are travelling to Mexico by bus with an expected arrival date of August 16, 2019.  Apparently, Guzman Galicia texted a photograph of himself and L.M.G.T. on the bus to the aunt, but Torres Garcia has not seen the photograph.  Additionally, Torres Garcia testified that Guzman Galicia contacted other family members, including Torres Garcia's brother and grandmother, to arrange for extended family

members to see L.M.G.T. in Mexico next week. Torres Garcia provided to the court addresses in Michoacán where she expects L.M.G.T. will be residing and visiting family members next week. (Supp. (ECF No. 19).) Based on her communications with family members, Torres Garcia testified she does not believe Guzman Galicia and L.M.G.T. are still in Las Vegas. At the hearing, Torres Garcia's attorney verballed renewed the motion for a warrant in lieu of a petition for writ of habeas corpus and requested that the court order an "Amber Alert." The court took the renewed motion for warrant in lieu of a petition for writ of habeas corpus under advisement and denied the request for an Amber Alert without prejudice of Torres Garcia to make any requests she deems necessary to the appropriate law enforcement agencies.

## II.     Analysis

The Hague Convention on the Civil Aspects of International Child Abduction is intended to "to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and . . . to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1, 19 I.L.M. 1501 (entered into force October 25, 1980).[3] Both the United States and Mexico are signatories to the Convention.[4] The United States implemented the Convention through the enactment of the International Child Abductions Remedies Act, codified as amended at 22 U.S.C. § 9001 *et seq.*

Under Article 12 of the Hague Convention, courts have a duty to determine if a child was wrongfully removed or kept away from his or her habitual residence, and if so, then to order the child returned to that nation for a custody determination. *See Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010) (stating that "[a] court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child. With a few narrow exceptions, the court must return the abducted child to its country of

---

[3] The text of the Hague Convention is available at http://www.hcch.net/e/conventions/text28e.html (last visited August 14, 2019).

[4] A list of contracting parties to the Hague Convention is available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (updated July 19, 2019).

habitual residence so that the courts of that country can determine custody.") Removal or retention of a child is wrongful when:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001) (quoting Hague Convention, art. 3). To establish a claim for return, a petitioner must prove: (1) the child was wrongfully removed or retained, (2) from his or her habitual residence, (3) in violation of the custody rights of the left-behind parent, and (4) the left-behind parent was exercising those rights. *See id.*

The petitioner has the burden of proving by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003(e)(1)(A). Under § 9003(b), a petition for return of a child is properly heard by "any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." *See also Duarte v. Bardales*, 526 F.3d 563, 569 (9th Cir. 2009) (stating that "[a] person seeking the return of a child under the [Hague] Convention may do so by filing a petition in a court where the child is located.") (abrogated on other grounds by *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224 (2014)). Under the Hague Convention, children are defined as persons under 16 years of age. Hague Convention, art. 4.

If a petitioning party shows that the child was wrongfully removed, Article 13 of the Convention provides certain narrow exceptions to Article 12's mandate that the child be returned to her habitual residence. Given that Guzman Galicia has not answered or otherwise appeared in this case, the court does not express an opinion on any defenses to the petition for return that may be applicable in this case.

### A.   *Jurisdiction*

The Hague Convention is in force between Mexico and the United States. Based on the evidence in the record, L.M.G.T. was physically located in Las Vegas, Nevada, at the time the

petition for return was filed, is enrolled at D. Smith Middle School in North Las Vegas, and she is younger than 16 years old. The court therefore finds that it has jurisdiction to determine this case for return under the Convention. The parties are advised, however, that this recommendation is not a determination of the merits of any custody issues within the meaning of the Hague Convention. *See Cuellar*, 596 F.3d at 508.

      *B.*       *Case-in-Chief for Return*

Based on Torres Garcia's declaration, L.M.G.T.'s lived with both parents in Michoacán, Mexico, from the time she was born on July 4, 2006, until an unknown date after May 2015 when the parties separated, and Guzman Galicia removed L.M.G.T. from Mexico to the United States. The court therefore finds that Mexico was L.M.G.T.'s habitual residence at the time she was removed to the United States.

Regarding custody rights, Torres Garcia argues that L.M.G.T.'s removal was in contravention of the Family Code for the State of Michoacán, which grants custody rights to both parents unless a court order provides otherwise. Torres Garcia provides to the court provisions of the Family Code, including Article 398, which states that under the doctrine of *patria potestas*, parental authority is to be exercised by a child's father and mother, and Article 422, which describes situations in which parental authority is lost, including by judicial order. (Compl. (ECF No. 1) at Ex. 3.)

The court finds that Torres Garcia has custodial rights to L.M.G.T. under the Mexican law doctrine of *patria potestas*. *See, e.g., Gonzales v. Gutierrez*, 311 F.3d 942, 954 (9th Cir. 2002) (explaining that the "concept of *patria potestas* is derived from Roman law and originally meant paternal power over the family and household" but holding that Mexico's doctrine of *patria potestas* "does not confer rights of custody upon the noncustodial parent where a competent Mexican court has already decided the rights and obligations of both parents"), *overruled on other grounds*, *Abbott v. Abbott*, 130 S. Ct. 1983, 1986 (2010); *Gonzalez v. Pena*, 194 F. Supp. 3d 897, 902 (D. Ariz. July 8, 2016) (finding that the Mexican law doctrine of *patria potestas* was sufficient to establish custodial rights of unmarried parents under the Hague Convention when there were no court orders dictating parenting time); *Lieberman v. Tabachnik*, 625 F. Supp. 2d

1109, 1123–24 (D. Colo. 2008) (finding the Mexican interpretation of *patria potestas* to be consistent with Convention's definition of custody); *Aguilera v. De Lara*, No. CV14-1209-PHX-DGC, 2014 WL 3427548, at *2 n.1 (D. Ariz. July 15, 2014) (stating that "custody rights under Mexican law, referred to as 'patria potestas' recognize a parent's right to care for the child, reside with the child, and provide for the child's necessities. The rights belong to both parents.").

Torres Garcia's declaration states she is L.M.G.T.'s mother, and she is listed as the mother on the birth certificate. Although the parties were not married, the evidence in the record demonstrates that Torres Garcia and Guzman Galicia cohabited and shared custody of L.M.G.T. from the time she was born in July 2006 until the parties separated in May 2015. Although the court notes Guzman Galicia has not appeared in the case, based on the record before the court, there is no evidence indicating that a Mexican court has entered any orders terminating or limiting Torres Garcia's custody rights. The court therefore finds Torres Garcia has custody rights over L.M.G.T. for the purposes of the Convention.

Torres Garcia presents evidence indicating she was exercising her custody rights at the time of removal. Torres Garcia lived with L.M.G.T. from her birth on July 4, 2006 until the parties separated in May 2015. Torres Garcia's declaration states that L.M.G.T. was removed from Mexico without her knowledge or consent, preventing her from exercising her custody rights. Torres Garcia further states that she did not acquiesce in L.M.G.T.'s removal from Mexico. In January 2017, Torres Garcia filed a custody motion and criminal offense report in Michoacán against Guzman Galicia. In February 2018, she filed a Hague Convention request for the return of the child with the Mexican authorities. She sought after L.M.G.T. until late 2018, when she learned L.M.G.T. was in Las Vegas. Based on the evidence, it appears Torres Garcia would have continued to exercise her custody rights if Guzman Galicia had not taken L.M.G.T. to the United States after the parties separated.

Additionally, Torres Garcia states she refused to voluntarily give up her custody rights as requested by Guzman Galicia when he telephoned her from Las Vegas. Torres Garcia demanded that Guzman Galicia return L.M.G.T. to Mexico and contacted other relatives to attempt to secure L.M.G.T.'s return, but Guzman Galicia refused to do so. She also attempted to secure a visa to

travel to the United States to retrieve L.M.G.T. from Guzman Galicia, but her visa application was denied. Given these facts, the court finds that Torres Garcia was exercising her custody rights at the time of removal and that Guzman Galicia wrongfully removed L.M.G.T. to the United States and retained her here in violation of Torres Garcia's custody rights. Having weighed the evidence in the record, the court finds that Torres Garcia has established by a preponderance of the evidence each element of her claim for the return of L.M.G.T. to Mexico.

### C.   Conclusion

Given that Torres Garcia established her case-in-chief for the return of L.M.G.T. by a preponderance of the evidence and that Guzman Galicia failed to answer or otherwise appear in the case to present any defenses to the petition for return, the court will recommend that the petition for return be granted. The court further will recommend that L.M.G.T. be returned to Mexico for the appropriate Mexican court to make a final custody decision. The court further will recommend that Guzman Galicia be ordered to appear before the court with L.M.G.T. on a date and time to be specified by the United States district judge assigned to this case for a hearing to determine the logistics of L.M.G.T.'s return to Mexico.

To the extent Torres Garcia verbally renewed her motion for a mandatory injunction ordering law enforcement to remove L.M.G.T. from Guzman Galicia's control, the court will recommend that motion be denied without prejudice for Torres Garcia to file a motion with a fully developed complement of the supporting evidence and law as stated by the United States district judge at the preliminary-injunction hearing.

The court emphasizes that under the Hague Convention, if this report and recommendation is adopted by the United States district judge, it will have the limited effect of ordering L.M.G.T.'s return to Mexico, where the final determination regarding custody will be resolved through custody proceedings in the Mexican family court, not this case. Finally, Guzman Galicia is advised that the court's previous order that he must not remove L.M.G.T. from the State of Nevada pending the outcome of this case remains in effect.

**III.   Recommendation and order**

IT IS THEREFORE RECOMMENDED that the court:

1. GRANT Torres Garcia's ex parte emergency motion for immediate return of the minor child (ECF No. 9);

2. ORDER that an additional hearing be set to finalize the time, manner, date, and other transportation arrangements of L.M.G.T.'s return to Mexico and incorporate them in an order of return;

3. ORDER that the parties, upon L.M.G.T.'s return to Mexico, submit to the appropriate Mexican family court with jurisdiction to resolve custody and related issues. The parties are reminded that this recommendation is not a determination of the merits of any custody issues within the meaning of the Hague Convention. Those issues are left to the appropriate Mexican court.

IT IS FURTHER RECOMMENDED that Torres Garcia's request for attorney's fees and costs be DENIED without prejudice for her to file a motion for attorney's fees that complies with Local Rule 54-14.

IT IS ORDERED that Torres Garcia must personally serve this report and recommendation on Guzman Galicia.

**IV.   Notice**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 15, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE